No. 22127.

CHERRY CREEK VALLEY WATER AND SANITATION DISTRICT, A QUASIMUNICIPAL CORPORATION OF THE STATE OF COLORADO *v.* GOLDEN KEY MANOR HOMES, INC., A COLORADO CORPORATION, AND THE CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORATION OF THE STATE OF COLORADO.

(451 P.2d 765)

Decided March 17, 1969.

WALLACE & HAHN, DAVID J. HAHN, for plaintiff in error.

FRANCIS R. SALAZAR, CARL L. HARTHUN, for defendant in error Golden Key Manor Homes, Inc.

MAX P. ZALL, City Attorney, W. H. VANDUZER, Deputy, JAMES H. SNYDER, Assistant, for defendant in error City and County of Denver.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THIS was an action brought by the plaintiff in error (herein called the district) for a preliminary and permanent injunction restraining the defendants in error from making connections into the district's sewer lines. Golden Key Manor Homes, Inc. will be referred to as Golden Key and the City and County of Denver as Denver. The district was organized under C.R.S. 1963, 89-5-1 *et seq.* It has a sewer system which, by virtue of a contract dated December 29, 1961, flows into Denver's sewer system.

Golden Key was the owner and developer of a residential subdivision. This property was outside the boundaries of the district and was annexed to Denver on March 20, 1965. Under date of March 22, 1965 Denver

and the district entered into a "Supplemental Agreement," supplementing and amending the agreement of December 29, 1961. This referred to the district's "A," "B," and "C" sewage systems and to its "A," "B," and "C" outfall lines. The supplemental agreement provided for varying fees to be paid to the district as to lands in different categories, such as being within or without the city limits of Denver and within or without boundaries of the district. There was attached to the supplemental agreement a map containing an area denominated " 'C' — 140 Acres (Outside Area)." 60 acres of Golden Key's annexed land was within this 140-acre area. Paragraphs B 5 and 6 of the supplemental agreement read as follows: "5. *Overall Acreage Fee:* The overall acreage fee, based on a total cost paid by the District for all Sewer lines to date and 3,662.7 acres net area in the District as shown on the chart is $508.60 per acre. This fee will be recalculated for every additional 160 acres which are served through the District's sewer system.

"6. *Outfall Line Fee:* Any area outside of the District boundary using *only* an outfall sewer line, such as "A" Outfall, "B" Outfall, or "C" Outfall would pay only the acreage fees noted on the chart, *i.e.,* "A" — $39.45 per acre, "B" — $247.05 per acre, "C" — $108.63 per acre, which fees would be paid to the District before connections to the sewer are made or lines extended and which would be re-evaluated for every additional 160 acres served in a particular outfall sewer system."

Golden Key laid sewer lines within its subdivision and was about to connect these with the district's lines when the complaint was filed on September 2, 1965. Prior to the filing of the action Golden Key had offered the district an outfall line fee of $108.63 per acre under the provisions of paragraph 6 quoted above. The district had insisted that it was entitled to a substantially greater amount. Denver took the position that $108.63 per acre was payable by virtue of the provisions of paragraph 6.

In the negotiations no agreement was reached as to the amount of fees payable.

The district's basic positions were that: (1) there being no contract between it and Golden Key, the latter did not have the right to tap onto the district's system; and (2) if Golden Key had the right to tap as a third party beneficiary under the supplemental agreement, the district was entitled to substantially more than $108.63 per acre. Golden Key and Denver argued that by the supplemental agreement Denver was obtaining rights for lands lying within its city limits; that Golden Key, being the owner of lands which had been annexed to Denver, was entitled to benefits provided by the supplemental agreement; and that paragraph 6 fixing the fee of $108.63 per acre was applicable.

At the conclusion of the hearing on the temporary injunction the trial judge made a statement, a portion of which is as follows:

"I find as a fact that the parties to this contract intended the contract to embrace the land in dispute, and Paragraph 6 of the contract refers to the 140 acres mentioned in this lawsuit, and the Defendant is entitled to be considered a beneficiary under the contract. There may be some question as to the amount of fees to be paid for the use of the sewer line, but this Court at this point in this litigation was not concerned with that, and was not asked as a matter of fact to determine the fees to be paid. It is well established by all authorities that the power to issue injunctions, whether prohibitive or mandatory should be exercised with great caution and only when the reason and necessity therefor are clearly established. The only necessity as I see the testimony here which could possibly be claimed would be the overloading of the sewer line at some future date. That is a very remote possibility, and probably will never happen. The Plaintiff has shown no irreparable harm by the situation as it exists now. The reason and necessity for issuing a mandatory injunction at this point has not been

shown by clear evidence. If the equities between the parties are to be considered as the Court was urged to do, it is my opinion, and I so find, the equities are all on the side of the Defendant rather than on the Plaintiff's. For the reasons stated the application for a temporary injunction is denied."

Counsel for the district raised a question as to the finding that Golden Key's property was within the contemplation of the supplemental agreement and — it is to be inferred — was suggesting that this conclusion could be eliminated from the court's findings. The court then said: "I definitely decided that. I don't think I will change my mind."

The district's counsel in effect agreed that the evidence on a hearing for a permanent injunction would be the same and indicated that the court might make final disposition of the case at this point. Accordingly, judgment was entered denying the injunction and dismissing the complaint.

Over 1100 folios of testimony and some correspondence and other exhibits admitted into evidence go in large part toward ascertaining the intent of the parties in making the supplemental agreement, to the interpretation thereof, and to the alleged inequity of the fee of $108.63 per acre. In the light of our disposition of this matter, most of this evidence — and much of the briefs — need not be considered.

On oral argument counsel for the district stated in effect that, since the culmination of proceedings in the trial court, the sewage system of Golden Key had become so intertwined with the district's system that an injunction would not be feasible. He advised that the district's present desire is only to obtain substantially more than $108.63 per acre. He further pointed out that the only reason for pursuing this writ of error was to overrule the trial court's statement that it was the intent of the parties to the supplemental agreement to include the land involved, i.e., the district wishes to avoid this

becoming *res judicata.* In other words, in the absence of agreement, it is apparent that there is going to be further litigation to establish the amount payable by Golden Key to the district and the district wishes to be in as advantageous a position as possible in entering into that litigation.

■ It would seem that the present attitude of the district amounts to a consent to an affirmance of the trial court's ruling in denying the district's request for injunctive relief. In any event, we would not reverse this denial. The trial court acted well within the realm of sound discretion. *Allen v. Denver,* 142 Colo. 487, 351 P.2d 390.

■ As matters now stand, while it has been ruled that the supplemental agreement embraces Golden Key's property, there has been no determination as to the portion or portions of the contract which are applicable; nor as to whether any portion of the supplemental agreement is ambiguous; nor, assuming ambiguity, as to the intent of the parties. Neither has there been any determination as to how the respective rights and liabilities may be affected by the conduct of the parties. The district is free, therefore, to pursue matters along these lines without any *res judicata* limitation.

■ As to the statement of the trial court to the effect that the supplemental agreement was intended to embrace Golden Key land, we easily could take the position that any determination of *res judicata* should first be made by the trial court in a future action. Certainly, a determination of that point is not essential to a disposition of this writ of error. We think, however, that justice and fairness invite an expression on our part.

There were two bases for the court's refusal to grant the injunction: (1) the finding that the supplemental agreement embraced the property involved; and (2) a failure to show irreparable damage. While it might be argued that the second ground would have been sufficient, there is no question but what the first finding

was within the issues before the court and cannot be considered as nonessential or immaterial. *Newby v. Bock,* 120 Colo. 454, 210 P.2d 985; 30A Am. Jur. *Judgments* §§ 375-377. Any new action will therefore have to be based upon this previous judicial determination that the land involved was and is embraced in the supplemental agreement.

Judgment affirmed.

Mr. Justice Pringle, Mr. Justice Hodges and Mr. Justice Lee concur.